NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar Number 13644
JAMES A. BLUM
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
James.Blum@usdoj.gov
Attorneys for the United States

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America, | 3:20-CV-076-MMD-CLB |
| Plaintiff, | **Complaint For Forfeiture In Rem** |
| v. | |
| $16,000.00 in United States Currency, | |
| Defendant. | |

The United States of America respectfully states as follows:

**Subject Matter Jurisdiction**

1. This court has jurisdiction under 19 U.S.C. §§ 1603, 1608, and 1610; Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Fed. R. Civ. P. Supp. Rule) C, E, and G; 21 U.S.C. § 881(a)(6); 18 U.S.C. § 983; and 28 U.S.C. §§ 1345, 1355, and 1395, because (1) the United States of America commenced this civil in rem action; (2) any of the acts or omissions giving rise to this forfeiture occurred in this judicial district; (3) the forfeiture proceeding accrued in this judicial district; and (4) the defendant currency (the currency) was found in this judicial district.

**In Rem Jurisdiction**

2. This Court will have in rem jurisdiction over the currency if this Court signs an Order for Summons and Warrant of Arrest in Rem for the Property and the Clerk of the Court issues a Summons and Warrant of Arrest in Rem for the Property, which will be executed upon the currency and returned to the Court.

## Venue

3. This court has venue of this matter pursuant to 28 U.S.C. § 1395 and Supplemental Rules G(1) and C(2)(c), because (1) the currency was found in this judicial district and (2) the currency is now and, during the pendency of this action, will be in this judicial district.

## Particular Description

4. The currency is more particularly described as follows: $16,000.00 in United States Currency.

## Place of Seizure

5. On or about September 10, 2019, a special agent of the Drug Enforcement Administration (DEA) seized the currency from a vehicle being occupied by Cortez Williams on land at Washoe County, Nevada.

## Custody of Asset

6. On or about September 20, 2019, the property was deposited in the United States Marshals' Seized Asset Deposit Fund Account and has remained in the care, custody, and control of the United States Marshals Service in Nevada since then.

## Timely Filing

7. The currency was subject to administrative summary forfeiture proceedings; however, a claim was filed on or about November 7, 2019, by Williams, claiming ownership and entitlement to the currency. The Complaint is timely filed.

## Value

8. The currency's value is $16,000.00 in United States Currency.

## Forfeiture Statutes

9. Because of the information below, the currency is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

/ / /

/ / /

/ / /

**General Allegations**

10. On September 10, 2019, at approximately 10:20 A.M., Williams was driving a silver 2019 Nissan Pathfinder bearing a Georgia license plate on Interstate 80 westbound in Washoe County, Nevada. Williams was the sole occupant of the vehicle.

11. A Washoe County Sheriff's Office (WCSO) officer observed the Pathfinder following another vehicle at approximately one-and-a-half vehicle lengths. In addition, the officer observed the Pathfinder change lanes and, then, twice pass over traffic lines.

12. The WCSO officer initiated a traffic stop for the following violations of Nevada Law: Following Too Closely and Failure to Maintain Lane.

13. The WCSO officer approached the Pathfinder and made contact with Williams. Williams identified himself with a voided Nevada driver's license. Williams then provided the officer with a paper printout license from the Nevada Department of Motor Vehicles (DMV) and communicated that he had just ordered a new motorcycle license.

14. The WCSO officer asked Williams for the vehicle information, and Williams stated that the Pathfinder was a rental. When he was unable to find the agreement, Williams called the rental-car company. In addition, Williams communicated to the officer that he was en route to Sacramento, California to see his girlfriend.

15. While Williams was on the phone, the WCSO officer submitted Williams's information for a wants-and-warrants check. The officer returned to his patrol vehicle to retrieve his citation machine. WCSO dispatch advised the officer that it was unable to find a license match for Williams. Dispatch also advised the officer that Williams's name appeared in a local criminal-history database, disclosing that Williams had a criminal record for illegal-drugs possession, illegal-drugs trafficking and transportation, and illegal-drugs sales. Ultimately, dispatch would find a match for Williams's license.

16. The WCSO officer proceeded to work on Williams's citation. While doing so, a backup officer arrived on scene.

17. The WCSO officer asked Williams, who was still on the phone with the rental-car company, to exit the Pathfinder. Williams complied and, then, handed his

cellular telephone to the officer. A representative from Enterprise Rent-a-Car, who was on the phone, confirmed that the Pathfinder was currently being rented by Williams.

18. The WCSO officer asked Williams whether he had ever been arrested. Williams responded affirmatively, and he stated that he had past "drug violations."

19. While the WCSO officer was still working on the warning citation, the backup officer deployed his certified, reliable canine—trained to detect the odor of illegal drugs. The canine alerted to the presence of the odor of illegal drugs coming from the Pathfinder.

20. Based on the positive alert, investigators performed a probable-cause search of the Pathfinder. During the search, they located a small black Louis Vuitton backpack on the rear passenger seat. The backpack contained three bundles of United States currency. The bundles were secured with rubber bands. Based on his training and experience, the WCSO officer believed that the currency's packaging was indicative of illegal-drugs trafficking.

21. Also located during the search was an Internal Revenue Service (IRS) Form W-2G, from Tamarack Junction Casino in Reno, showing slot-machine winnings of $3,302.13 on July 15, 2019.

22. When asked how much money was in the backpack, Williams approximated the amount to be $13,000 to $15,000. Williams said that he was carrying the currency because he planned to make a payment on his girlfriend's vehicle and purchase an expensive dinner, totaling between $600 and $700. Williams also communicated that the currency was composed of $100 bills.

23. Williams also told investigators that the money was earnings from construction work and production of online-video content. Williams made no mention of the cash being casino winnings.

24. DEA agents arrived on scene to assist with the investigation. At approximately 11:37 A.M., the agents engaged Williams in consensual conversation.
/ / /

25. Williams communicated that he was on the way to Sacramento to visit his girlfriend. When asked to identify her, he provided the name "Razinae Rucker," but he also stated that he was unsure how to spell her first name and whether the surname provided was her true last name.

26. Williams stated that he was planning to make a $6,000 payment on his girlfriend's Jeep Wrangler. Williams asserted that a sales associate at the dealership, named "Mo," was expecting him. When one of the agents asked Williams whether "Mo" would verify his statement, Williams then stated that he had left a message with the dealership and was unsure whether "Mo" had received it.

27. When asked about the value of the currency, Williams stated that it totaled exactly $16,000. Earlier, he had told the WCSO officer that the cash totaled approximately $13,000 to $15,000.

28. When asked about his plans for the rest of the currency (the portion not being used to make the vehicle payment), Williams said that he intended to give between $500 and $600 to his girlfriend and spend a portion to take his friends out to a nice dinner in Sacramento. Williams also stated that he was not planning to spend all of the money.

29. Williams asserted that he maintained bank accounts, credit cards, and debit cards, including with Bank of America and Capital One. When asked why he did not keep the money in a safer, more convenient form—such as a secured monetary instrument—Williams commented that he was unconcerned with getting "ripped off." Williams said that he kept large sums of cash at hand so that he could easily give money away to various people. In addition, Williams asserted that he managed his money similarly to a drug dealer because he used to be one.

30. When asked about the source of the currency, Williams stated that he made money from construction work and royalties from producing online-entertainment content. Regarding the construction work, Williams said that he made a large portion of his earnings from such work and identified his employer as Michael Radcliff and the company as Quality Builders in Reno. The DEA subsequently contacted the owner of Quality

5

Builders. The owner stated that nobody named Michael Radcliff had ever worked for him. Further, the owner said that Williams had only worked for him on one occasion via a temp agency, more than three years earlier.

31. When asked to estimate his annual income, Williams provided a figure of $40,000 to $50,000, but, later, stated that he only netted approximately twenty-five percent of that because he reinvested most of his income into his entertainment-content business. When asked to estimate his monthly personal and business expenses, Williams provided figures that added up to annual expenses of $72,840 to $80,340. It was unclear how he satisfied such expenses from a gross annual income of $40,000 to $50,000, particularly if a significant portion were reinvested into his entertainment-content business.

32. The DEA agents asked Williams about the casino receipt found in the Pathfinder. Williams now stated that he was a frequent gambler and had recently been on a winning streak. Williams first said that he had won $9,500 on one occasion and $2,500 on five other occasions, all within the last fifteen months. One of the agents asked Williams whether casino records would verify such winnings. Williams initially said that the records would, but he then said that he actually won $1,500 on each of the five occasions. When Williams later submitted his administrative claim, he included IRS Form W-2Gs showing four winnings, in the stated time period—$1,224.90 from December 30, 2018, $1,555,25 from February 14, 2019, $1,528 from April 2, 2019, and $3,302.13 from July 15, 2019. Williams submitted no record of a $9,500 casino payout from the stated time period. Instead, Williams included documentation of a 2016 casino payout for $9,405.40 and a 2016 check for $9,500 claimed to be a payment from his sale of a Subaru.

33. While the DEA agents conversed with Williams, the lead WCSO officer placed the bag of currency along the roadside in the brush. Another WCSO officer, who had not seen where the currency was placed, deployed his certified, reliable canine—trained to detect the odor of illegal drugs. The canine was a different canine than the canine that had been deployed in the vicinity of the Pathfinder. The canine found the bag of currency and alerted to the odor of illegal drugs coming from it.

34. At the conclusion of the traffic stop, the DEA seized the currency. The WCSO issued a warning citation for Following Too Closely and Failure to Maintain Lane.

35. A later official bank count determined that the currency totaled $16,000. It was composed of the following: $2,500 in $20 bills (125 bills) and $13,500 in $100 bills (135 bills). Williams had told WCSO officers that the currency was composed of $100 bills.

36. Following the seizure, the DEA learned that Williams was associated with six drug-related seizures and forfeitures:

    a. In 1995, the DEA administratively forfeited $14,560;

    b. In 2004, the DEA administratively forfeited $7,310;

    c. In 2004, the DEA administratively forfeited a Rolex Yacht-Master watch;

    d. In 2004, the DEA administratively forfeited a Rolex Submariner watch;

    e. In 2018, the DEA administratively forfeited $16,880; and

    f. In 2018, the DEA administratively forfeited $20,530.

37. Following the seizure, the DEA obtained the details of Williams's criminal history, which included the following convictions:

    a. In 1991, Williams was convicted of Felony Possession/Purchasing of Cocaine in California;

    b. In 1992, Williams was convicted of Felony Possession of Marijuana for Sale in California;

    c. In 1997, Williams was convicted of Felony Possession of a Narcotic Controlled Substance in California;

    d. In 1998, Williams was convicted of Felony Possession of a Narcotic Controlled Substance in California; and

    e. In 2016, Williams was convicted of Felony Trafficking in a Schedule I Controlled Substance in Nevada;

38. The $16,000 in United States currency is the entirety of the defendant currency.

/ / /

**First Cause of Action**

39. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 38 as though fully set forth herein.

40. The currency is all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

**Second Cause of Action**

41. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 38 as though fully set forth herein.

42. The currency is all proceeds traceable to an exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

**Third Cause of Action**

43. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 38 as though fully set forth herein.

44. The currency is all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

**Fourth Cause of Action**

45. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 38 as though fully set forth herein.

46. The currency is any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A)

and 1961(1)(D), or a conspiracy to commit such offense, and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## Conclusion

47.    Because of the foregoing, the currency is subject to seizure and to forfeiture and has become and is forfeited to the United States of America, plaintiff, under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

## Prayer for Relief

WHEREFORE, the United States of America, Plaintiff, prays as follows:

1.    Due process issue to enforce the forfeiture of the defendant property;

2.    Due notice be given to any interested party to appear and to show cause why the forfeiture should not be decreed;

3.    The defendant property be condemned and be forfeited to the United States of America; and

4.    This court enter other and further relief as it deems just and proper.

Dated this 29th day of January 2021.

Respectfully submitted,

NICHOLAS A. TRUTANICH
United States Attorney

  /s/ James A. Blum
JAMES A. BLUM
Assistant United States Attorney

## Verification

I, Shane Murray, am a Special Agent employed by the Drug Enforcement Administration, United States Department of Justice, and am the agent assigned the responsibility for this case.

I have read the contents of the foregoing Complaint for Forfeiture in Rem, and the statements contained therein are true to the best of my knowledge, information, and belief.

I declare and verify under penalty of perjury the foregoing is true and correct.

DATED: 01/29/2021

Shane Murray, Special Agent
Drug Enforcement Administration

NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar Number 13644
JAMES A. BLUM
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
James.Blum@usdoj.gov
Attorneys for the United States

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| United States of America, | 3:20-CV-076-MMD-CLB |
|---|---|
| Plaintiff, | **Summons and Warrant of Arrest in Rem for the Property** |
| v. | |
| $16,000.00 in United States Currency, | |
| Defendant. | |

TO:   CUSTODIAL LAW ENFORCEMENT AGENCY

On the 29th day of January 2021, the United States of America filed a Complaint for Forfeiture in Rem against the $16,000.00 in United States Currency for the reasons stated in the Complaint;

**YOU ARE, THEREFORE, COMMANDED** to seize, to arrest, to attach, to take into custody, and to retain the $16,000; to serve the Complaint for Forfeiture in Rem, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest, by personal service or by certified mail, return receipt requested, and regular mail to any person who reasonably appears to be a potential claimant on facts known to the United States before the end of the 60 day publication period; and to make a return of this Summons and Warrant of Arrest in Rem for the Property.

A person or an entity who asserts an interest in the defendant property must, pursuant to Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture

Actions G(5), (1) file a verified claim that (a) identifies the specific property claimed, (b) identifies the claimant and states the claimant's interest in the property, and (c) is signed by the claimant under penalty of perjury pursuant to 28 U.S.C. § 1746; (2) file the verified claim with the Clerk of the above-entitled Court no later than 35 days after the notice is sent or, if direct notice was not sent, no later than 60 days after the first day of publication on the official internet government forfeiture site, www.forfeiture.gov; (3) file an answer to the Complaint for Forfeiture in Rem or a motion under Rule 12 with the Clerk of the Court, Bruce R. Thompson U.S. Courthouse and Federal Building, 400 South Virginia Street, 3rd Floor, Reno, Nevada 89501, no later than 21 days after filing the verified claim; and (4) serve a copy of the verified claim and the answer at the time of each filing on James A. Blum, Assistant United States Attorney, 501 Las Vegas Boulevard South, Suite 1100, Las Vegas, Nevada 89101.

If a potential claimant fails to do so, a judgment of forfeiture by default will be entered against that potential claimant for the relief demanded in the Complaint for Forfeiture in Rem.

All persons and entities who have an interest in the defendant property may, in addition to filing a claim or in lieu of the filing of a claim, submit a Petition for Remission or Mitigation of the forfeiture for a non-judicial determination of this action pursuant to 28 C.F.R. Part 9.

DATED _____, 2021.

DEBRA KEMPI, CLERK
United States District Court

By: _____
        DEPUTY CLERK

2

NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar Number 13644
JAMES A. BLUM
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
James.Blum@usdoj.gov
Attorneys for the United States

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>$16,000.00 in United States Currency,<br><br>　　　　　Defendant. | 3:20-CV-076-MMD-CLB<br><br>**Order for Summons and Warrant of Arrest in Rem for the Property and Notice** |

A Complaint for Forfeiture in Rem arising from a federal statute has been filed by the United States of America pursuant to Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions (Fed. R. Civ. P. Supp. Rule) G. The Court, having reviewed the Complaint, has found probable cause and that the United States has possession of the defendant property; therefore, the clerk shall issue a Summons and Warrant of Arrest in Rem for the Property, pursuant to Fed. R. Civ. P. Supp. Rule G(3)(b).

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that a Summons and Warrant of Arrest in Rem for the Property issue against the $16,000.00 in United States Currency (property);

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the United States seize, arrest, attach, take into custody, and retain the property;

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that notice of the action and the arrest be given by the United States on the United States' official internet forfeiture site, www.forfeiture.gov, for at least 30 consecutive days pursuant to Fed. R. Civ.

P. Supp. Rule G(4)(a)(iv) which is reasonably calculated to notify potential claimants of this action;

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that a copy of the Complaint for Forfeiture In Rem, this Order, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest be personally served or sent by certified mail, return receipt requested, and regular mail to any person who reasonably appears to be a potential claimant on facts known to the United States before the end of the 60 day publication period which is reasonably calculated to notify potential claimants of this action;

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the United States shall file proof of publication and service with the Clerk of this Court;

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that a person or an entity who asserts an interest in the defendant property must, pursuant to Fed. R. Civ. P. Supp. Rule G(5), file a verified claim, setting forth the person's or its interest in the property, that (a) identifies the specific property claimed, (b) identifies the claimant and states the claimant's interest in the property, and (c) is signed by the claimant under penalty of perjury pursuant to 28 U.S.C. § 1746;

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the person or entity must file the verified claim with the Clerk of the above-entitled Court no later than 35 days after the notice is sent or, if direct notice was not sent, no later than 60 days after the first day of publication on the official internet government forfeiture site, www.forfeiture.gov;

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the person or entity must file an answer to the Complaint for Forfeiture in Rem or a motion under Rule 12 with the Clerk of the Court, Bruce R. Thompson U.S. Courthouse and Federal Building, 400 South Virginia Street, 3rd Floor, Reno, Nevada 89501, no later than 21 days after filing the verified claim;

/ / /

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the person or entity must serve a copy of the verified claim and the answer at the time of each filing on James A. Blum, Assistant United States Attorney, 501 Las Vegas Boulevard South, Suite 1100, Las Vegas, Nevada 89101.

Failure to file a verified claim and an answer within the prescribed times shall result in a judgment of forfeiture by default.

DATED  February 1 , 2021.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE